UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------x
:
BEVERLY KAHN,                                              :
:
                              Plaintiff,                  :
v.                                                        :
:
FAIRFIELD UNIVERSITY,                                     :
:
                              Defendant.                  :
:
----------------------------------------------------------x

United States District Court
District of Connecticut
FILED AT        BRIDGEPORT

3/23/04          20

Kevin F. Rowe, Clerk

By
Deputy Clerk

Case No.
3-02-CV-1576 (JCH)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... ii

PRELIMINARY STATEMENT............................................................................. 1

STATEMENT OF UNDISPUTED FACTS........................................................... 2

ARGUMENT......................................................................................................... 11

I.      SUMMARY JUDGMENT STANDARD................................................... 11

II.     ELEMENTS OF A CLAIM FOR DISCRIMINATION BASED
       UPON GENDER OR AGE....................................................................... 12

III.    PLAINTIFF'S TITLE VII, ADEA AND CFEPA CLAIMS FAIL
       AS A MATTER OF LAW......................................................................... 14

       A.     PLAINTIFF FAILS TO DEMONSTRATE A PRIMA
             FACIE SHOWING OF AGE DISCRIMINATION........................................ 14

       B.     THE UNDISPUTED FACTS ESTABLISHED LEGITIMATE
             NON-DISCRIMINATORY REASONS PLAINTIFF WAS
             NOT SELECTED AS A FINALIST................................................. 15

       C.     PLAINTIFF HAS NOT AND CANNOT DEMONSTRATE
             EVIDENCE SUPPORTING ANY CLAIM OF PRETEXT........................ 18

       D.     PLAINTIFF'S CFEPA CLAIMS ARE TIME BARRED........................ 19

IV.    PLAINTIFF HAS NOT AND CANNOT DEMONSTRATE EVIDENCE
       SUPPORTING CLAIM OF INTENTIONAL EMOTIONAL DISTRESS................ 21

CONCLUSION......................................................................................................... 22

# TABLE OF AUTHORITIES

## **CASES**

Argus Inc. v. Eastman Kodak Co.,
    801 F.2d 38 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bickerstaff v. Vassar College,
    196 F.3d 435 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 18

Brousard-Norcross v. Augustana College Ass'n,
    935 F.2d 974 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Byrnie v. Town of Cromwell Public Schools,
    73 F. Supp.2d 204 (D. Conn. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Carlton v. Mystic Transp.,
    202 F.3d 129 (2d Cir. 2000), cert. denied,
    530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000) . . . . . . . . . . . . . 13

Cerbone v. International Ladies Garment Workers Union,
    768 F.2d 45 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Chambers v. TRM Copy Centers Corp.,
    43 F.3d 29 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D'Amico v. City of New York,
    132 F.3d 145 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

de 1a Cruz v. New York City Human Resources Admin.,
    82 F.3d 16 (2d. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Delaware State College v. Ricks,
    449 U.S. 250 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Dept. of Health Services v. Comm'n on Human Rights & Opportunities,
    198 Conn. 479, 503 A.2d 1151 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fischbach v. Dist. of Columbia Dept. of Corrections,
    86 F.3d 1180 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fisher v. Vassar College,
        114 F.3d 1332 (2d Cir. 1997) *en banc,*
        cert. denied 522 U.S. 1075, 118 S.Ct. 851,
        139 L.Ed.2d 752 (1998)............................... 12, 14, 18

Goenaga v. March of Dimes Birth Defects Found.,
        51 F.3d 14 (2d Cir. 1995)............................. 18

Howely v. Town of Stratford,
        217 F.3d 141 (2d Cir. 2000)........................... 13

Huff v. West Haven Board of Education,
        10 F.Supp.2d 117 (D.Conn. 1999)....................... 21

Johnson  v. Chesebrough Ponds, Inc.,
        918  F.Supp. 543,(D.Conn 1996) aff'd, 104 F.3d 355 (2d Cir. 1996).......12

Kelly v. Yale University,
        2003 WL 1563424 (D.Conn. 2003)....................... 12, 21

Kocsis v. Standard Ins. Co.,
        142 F. Supp.2d 241(D.Conn. 2001)..................... 12

Kunda v. Muhlenberg College,
        621 F.2d 532 (3d Cir. 1980).......................... 15

Lieberman v. Gant,
        630 F. 2d 60 (2d Cir. 1980).......................... 15

Lipton v. Nature Co.,
        71 F.3d 464 (2d Cir. 1996)........................... 11

Mauro v. SNET,
        208 F.3d 384 (D.Conn. 2000).......................... 21

McDonnell Douglas Corp. v. Green,
        411 U.S. 792, 93 S.Ct. 1817, 36 L Ed. 668 (1973).................. 13

National R.R. Passenger Corp. v. Morgan,
        536 U.S. 101, 122 S.Ct. 2061, 1072-73, 153 L. Ed. 2d 106 (2002)....... 20

Phoenix v. Reddish,
        175 F. Supp.2d 215 (D. Conn. 2001)................... 12

iii

Schwapp v. Town of Avon,
    118 F. 3d 106 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Scotto v. Almenas,
    143 F.3d. 105 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Sioson v. Knights of Columbus,
    160 F. Supp.2d 316 (D.Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

State of Connecticut  v. Comm'n on Human Rights & Opportunities,
    211 Conn. 464 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Sweezy v. New Hampshire,
    354 U.S. 234, 77 S Ct. 1203, 1 L Ed.2d 1311 (1957) . . . . . . . . . . . . . . . . . . . . . 15

Texas Department of Community Affairs v. Burdine,
    450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d  207 (1981) . . . . . . . . . . . . . . . . . . . . 13

Weinstock v. Columbia University,
    224 F.3d 33 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 17

Zahorik v. Cornell Univ.,
    729 F.2d 85 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 17

## STATUTES

Fed. R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Title VII of the Civil Rights Act of 1964, 42 U.S..C.  §2000 et seq . . . . . . . . . . . . . . .   13

Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 et seq . . . . . . . . . .   13

Connecticut General Statutes  §46a-60 et. seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19,
                                                                     20

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------------x
                                                       :

BEVERLY KAHN,                         :
                                                       :
                         Plaintiff,         :
v.                                             :        Case No.
                                             :        3-02-CV-1576 (JCH)
FAIRFIELD UNIVERSITY,             :
                                                 :
                       Defendant.      :
                                                 :
-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Defendant Fairfield University submits this memorandum in support of its motion for summary judgment.

### PRELIMINARY STATEMENT

      Plaintiff Beverly Kahn, Ph.D., was an Associate Dean, College of Arts and Sciences, Fairfield University, until her resignation in July, 2001, to accept a position as Associate Provost at Pace University.  Between 1999 and 2001, Dr. Kahn served as Acting Dean of the College Arts and Sciences, pursuant to temporary appointment by President Kelley.

      In 2000-01, a Search Committee, composed of six faculty members, one dean, one alumnus, and one student, were elected and appointed pursuant to the University's governance process, to conduct a nation-wide search for a permanent Dean of the College of Arts and Sciences.  Dr. Kahn (female, age 53) applied for the permanent Dean's position, but was not selected as a finalist.  Upon the encouragement of a discontented former Search Committee member, Dr. Sharlene McEvoy, Dr. Kahn claims that the members of the Committee (five

1

female/1 male) failed to recommend her based upon gender and age. The University initially

extended an offer for the position to Dr. Thomas Falkner (age 53) and subsequently hired Dr.

Timothy Snyder, age 41, from Georgetown University.

Even assuming, arguendo, that the Plaintiff made a *prima facie* showing of

discrimination, the University has proferred legitimate and non-discriminatory reasons

supporting actions of the Search Committee.

For the foregoing reasons, and as more fully set forth below, the University's motion for

summary judgment should be granted.

## STATEMENT OF UNDISPUTED FACTS

Fairfield University (hereinafter "Fairfield" or "the University") is an independent,

comprehensive University, founded in 1942 by the Society of Jesus, consisting of the College of

Arts and Sciences (CAS), the Dolan School of Business, the School of Nursing, the School of

Engineering, the School of Continuing Education and the Graduate School of Education and

Allied Professions. (*See* Description of Dean of CAS position [App. Tab 4].)[1] Fairfield

University's faculty (approximately 206 full-time members) educate a population of

approximately 3,200 full-time undergraduate and 1,900 part-time undergraduate and graduate

students. (*See* Description of Dean of CAS position [App. Tab 4].)

On October 13, 2000, Fairfield University announced its search for the Dean of the

College of Arts and Sciences position (hereinafter, "the Dean"). (Search Announcement [App.

Tab 4].) The Dean's position became available in May, 1999, following Orin Grossman's

---

[1]     App. refers to the Appendix, Record Excerpts in Support of Defendant's Motion for
Summary Judgment. Copies of all cited deposition transcript pages and documents are attached
to Declaration of Carolyn Linsey and/or Declaration of Dr. Orin Grossman, filed herewith.
"Decl." refers to the Declaration and "Dep." refers to the Deposition testimony, filed herewith.

appointment as Acting Academic Vice President. President Aloysius Kelley, S.J. temporarily

appointed Associate Dean Beverly Kahn (hereinafter, "Dr. Kahn"), Acting Dean of the College

of Arts and Sciences, pending completion of a national search for a permanent Dean. (*See*

Grossman Decl. [Tab A].)

Dr. Kahn was initially hired by Fairfield University in 1990 as Assistant Dean of the

College of Arts and Sciences and Associate Professor of Politics. In 1994, she was promoted to

Associate Dean and remained an Associate Professor without tenure. (*See* Grossman Decl. [Tab

A]; Letters of Appointment [App. Tab 18].)

The Dean of the College of Arts and Sciences provides leadership and vision for the

University's largest school and reports to the Academic Vice President. (*See* Description of Dean

of CAS position [App. Tab 4].) Pursuant to Fairfield's governance document, the Academic

Council, as the executive arm elected by the General Faculty, appoints faculty to Search

Committees for the officers of the University, including the Academic Deans. (Fairfield

University Faculty Handbook, pp. 5-6 [App. Tab 1].) The fundamental objective of faculty and

administrator searches is to bring to Fairfield University the best, most intellectually vibrant and

most diverse candidates the committee can find. (*See* Guidelines for Faculty and Academic

Contract Staff Recruitment [App. Tab 2].)

In August, 2000, the Academic Council appointed the following faculty from the College

of Arts and Sciences to the Search Committee for a new Dean: Dr. Nancy Dallavalle; Dr. Nancy

Haegel; Dr. Dennis Keenan; Dr. Larry Miners; and Dr. Katherine Schwab. (*See* Memorandum,

dated January 16, 2001 [App. Tab 6]; Faculty Handbook. [App. Tab 1]; Grossman Decl. [Tab

A].) The Academic Council also appointed Dr. Sharlene McEvoy, Professor of Business Law,

3

Dolan School of Business as "outside" school representative. (*See* Memorandum, dated January 16, 2001 [App. Tab 6]; McEvoy Dep. at 18 [Tab L]).

Acting Academic President Orin Grossman appointed three additional members to the Search Committee: an administrator, Dr. Margaret Deignan, Dean of the School of Education and Allied Professions and Associate Professor of Psychology and Special Education, an alumni representative, Mary Margaret Weber, President of the Alumni Association, and a student representative, Kevin Hayes, President of the Student Association. (*See* Grossman Decl. [Tab A]; Memorandum, dated January 16, 2001 [App. Tab 6].)

President Kelley appointed Academic Vice President Orin Grossman to chair the Search Committee. (The Search Committee consisted of six females and three males, and one male non-voting chair, ranging in age from 22 [Kevin Hayes] to 69 [Dean Deignan]. [*See* Declarations of Committee members Tabs A-G.]) The role of the non-voting chairperson is to ensure that searches are conducted in conformity with governance documents, including the Faculty Handbook, to resolve any issues which may arise, and to facilitate a full discussion about the candidates. (Grossman Decl. [Tab A]; Guidelines for Faculty and Academic Staff Recruitment [App. Tab 2]; Grossman Dep. at 165-167 [Tab K].)

The Search Committee was responsible for conducting a thorough national search, and ultimately recommending a list of (usually three) finalists to President Kelley. (*See* Grossman Decl. [Tab A]; Guidelines for Faculty on Academic Staff Recruitment [App. Tab 2].) The finalists are invited to the campus for interviews with President Kelley, the Committee and other faculty and administration. The Committee does not rank the finalists, but rather informs President Kelley as to the strengths and weaknesses of each candidate. President Kelley selects

4

one of the finalists for the position. (*See* Grossman Decl. [Tab A]; Guidelines for Faculty on Academic Staff Recruitment [App. Tab 2].)

The University's requirements for the Dean of the CAS position were (I) academic credentials commensurate with appointment to senior academic rank; (ii) administrative ability; (iii) demonstrated academic leadership; and (iv) fiscal and personnel management expertise. (*See* Description of Dean of CAS position [App. Tab 4].)

The CAS Dean's position was advertised nationally, and women and minorities were encouraged to apply. Fairfield University is an Affirmative Action/Equal Opportunity Employer. (*See* Position Announcement, *Chronicle of Higher Education* [App. Tab 4].) It was the University's priority "to conduct searches in conformity with the norms of equal opportunity practices and to make increasingly special efforts to hire women and minorities..." (Grossman Decl. [Tab A]; Guidelines for Faculty and Academic Staff Recruitment [App. Tab 2].) The Search Committee members believed that it would be desirable to recruit a qualified minority or female candidate for the position. (Grossman Decl. [Tab A]; Grossman Dep. at 143-144.) In 2000, three of six permanent Academic Deans at Fairfield were women. (Grossman Dep. at 145–147.)

Vice-President Grossman informed Dr. Kahn about the process and advised her to submit her application. (Grossman Dep. at 210-211 [Tab K].) After the University received a letter nominating Dr. Kahn, she submitted her letter of interest and curriculum vitae on November 7, 2000. (*See* Kahn application [App. Tab 9].) Two other internal candidates also applied for the position: Dr. Jack Beal and Dr. Paul Lakeland. (*See* Memorandum, Candidates to be Interviewed, 12/7/00 [App. Tab 5].)

The Search Committee worked in subgroups to identify the superior candidates. The resumes of female candidates were identified and examined closely. (Grossman Dep. at 169-170.) The Search Committee invited ten semi-finalists (seven male and three female, one of whom withdrew) to personal interviews. There was initially disagreement among the members of the Search Committee as to whether or not it should interview Dr. Kahn and the other internal candidates. (Grossman Dep. at 165; Deignan Decl. [Tab B].) Chairperson Grossman recommended that the three internal candidates (including Dr. Kahn) should be interviewed. (Grossman Dep. at 165-166; Deignan Decl. [Tab B].)

The Search Committee scheduled one hour interviews with the candidates at the Stamford Marriott on the weekend of January 27-28, 2001. Each member was assigned one question to ask the candidate and the group evaluated the candidates' responses, as well as other factors, such as eye contact and sense of humor. (*See* Memorandum, January 23, 2001, and draft questions [App. Tab 8].)

On Saturday, January 27, 2001, the Search Committee interviewed Jack Beal (internal), Dr. Timothy Snyder (Georgetown University), Dr. Charlotte Borst (St. Louis University), Dr. Paul Lakeland (internal), Dr. Jeffrey Buller (Georgia Southern University) and Dr. Beverly Kahn (internal). On Sunday, January 28, the Search Committee interviewed Dr. Bryan LeBeau (Creighton University ), Dr. John Day ( St. Olaf College) and Dr. Thomas Falkner (College of Wooster). Some candidates were discussed between interviews, and all of the committee members agreed that Dr. Charlotte Borst, Dr. Jack Beal and Dr. John Day would not advance based upon their weak interviews. (Grossman Decl. [Tab A]; McEvoy Dep. at 36-41[Tab L].)

6

Most of the Committee members had previous professional interaction with Dr. Kahn. Dr. Miners and Dr. Schwab had served on the 1990 Search Committee, which selected Dr. Kahn for the position of Assistant Dean. Dr. Miners, Dr. McEvoy, Kevin Hayes and Dean Deignan had positive interactions with Dr. Kahn. (*See* Miners Decl. [Tab C ] and Deignan Decl. [Tab B ].) Dr. Sharlene McEvoy, a professor in the School of Business, had been appointed by Dean Kahn to the Fullbright Committee and had formed a positive impression of Dr. Kahn. (*See* McEvoy Dep. at 18 [Tab L]; Hayes Decl. [Tab G ].)

Dr. Katherine Schwab, Dr. Nancy Dallavalle and Dr. Nancy Haegel had negative experiences working under Dr. Kahn. They expressed that she sometimes placed unreasonable demands upon faculty and was insensitive to the views of others. (*See* Schwab Decl. [Tab D]; Dallavalle Decl. [Tab E ]; McEvoy Dep. at 49 [Tab L].

Dr. Grossman believed that Dr. Kahn had performed well as Assistant and Associate Dean. Dr. Grossman recommended her for the Acting Dean's position, notwithstanding some opposition by faculty and administrators. (Grossman Dep. at 77-78, 94. [Tab K]). The Dean of the College of Arts and Sciences is a line position, requiring strong leadership and people skills. (*See* Grossman Dep. at 93-96 and 102-108 [Tab K].) Dr. Grossman hoped Dr. Kahn might improve her people schools as Acting Dean. (Grossman Dep. at 106 [Tab K].)  After her appointment, he offered her advice about interacting with faculty, but she expressed that she wanted to make it on her own. (Grossman Dep. at 105-106 [Tab K ].) Dr. Grossman observed that Dr. Kahn had numerous conflicts with faculty and administrators during her tenure as Acting Dean. (*See* Grossman Dep. at 109-116 [Tab K].)

During the Search Committee's discussions of the candidates, some members expressed

7

criticism of Dr. Kahn, e.g. Dr. Keenan believed that her academic credentials and record of scholarship were inferior to other candidates; Dr. Dallavalle, Dr. Schwab and Dr. Haegel believed that she lacked leadership skills, resulting in poor relationships with some faculty, and had not communicated a vision for the College of Arts and Sciences. (*See* Grossman Dep. at 231-233 [Tab K]; Grossman Decl. [Tab A]; Keenan Decl. [Tab F ]; Dallavalle Decl. [Tab E ]; Schwab Decl. [Tab D].)

The Committee Members were uniformly impressed by the interviews and strong academic credentials of Dr. Thomas Falkner and Dr. Tim Snyder. (*See* Grossman Dep. at 230 [Tab A]; Deignan Decl. [Tab B]; Keenan Decl [Tab F]; Schwab Decl. [Tab D ]; Dallavalle Dcl. [Tab E]; McEvoy's Dep. at 41-46 [Tab L ].)

On January 28, 2001, after further discussion of the candidates and at the suggestion of Dr. Miners, the Committee proceeded to vote for the final candidates. Each member cast three votes and the resulting tally was: Dr. Snyder, 9 votes (male, age 41); Dr. Falkner, 6 votes (male, age 53); Dr. LeBeau, 5 votes (male, age 53); Dr. Buller, 4 votes male, age 46); Dr. Kahn, 3 votes (female, age 53). (McEvoy note [App. Tab 22].) *See* Falkner Decl.; LeBeau Decl.; vitae of Buller [App. Tab 13]; Vitae of Snyder [App. Tab 11)

Dr. Sharlene McEvoy, Dr. Larry Miners and (student) Kevin Hayes voted for Dr. Kahn; Six members of the Search Committee (five females, one male) did not vote for Dr. Kahn. (*See* Grossman Decl. [Tab A ]; McEvoy Dep. at 43 [Tab L ].)

The Committee agreed that the internal candidates, Dr. Beal, Dr. Lakeland and Dr. Kahn, had not received the requisite votes, and that Dr. Snyder and Dr. Falkner were the preferred candidates. The Committee scheduled a meeting on January 31, 2001, to further consider

8

candidates Le Beau and Buller. (*See* Grossman Dep. at 230-231 [Tab.K].)

On or about January 30, 2001, Academic Vice-President Grossman, Chair of the Search

Committee, advised Dr. Kahn that the Search Committee was no longer considering her for the

Dean's position. (*See* Grossman Dep. at 242 [Tab K].) She subsequently met with Dr. Grossman

and questioned him about the Committee's actions. Subsequently, Dr. Larry Miners and Dr.

Margaret Deignan communicated to Dr. Kahn their sympathy that the outcome had been

disappointing for her. (Kahn Dep. at 74-75, 77-79 [Tab M].)

On January 31, 2001, Committee Members expressed concern about information leaked

to the faculty that the internal candidates had been eliminated as finalists. Dr. Nancy Dallavalle

urged the Committee to reconsider the candidacy of Dr. Paul Lakeland. Dr. Sharlene McEvoy

advocated that the Committee reconsider Dr. Kahn's candidacy. (*See* Grossman Decl. [Tab A];

Dallavalle Decl. [Tab E]; McEvoy Dep. at 56-58 [Tab L ].)

Dr. McEvoy made a scripted presentation to the Committee (McEvoy notes, App. Tab

23). She informed the members that, speaking from an attorney's perspective, she believed that

Dr. Kahn was a superior candidate based upon the following "objective" measures: (a) length of

service as Dean; (b) accomplishments as Dean; (c) length of service in academics; (d) grant-

procuring abilities; and (e) accomplishments during the last 11 years. Dr. McEvoy passed out a

summary she had prepared listing Dr. Kahn's, as well as the four top candidates' schools, rank,

length of service, scholarly works and experience with certain issues. *Id.* Dr. McEvoy further

informed the Search Committee that she believed that Dr. Kahn could have a *prima facie* claim

of gender discrimination. She recommended that in order to avoid being sued, the Committee

include Dr. Kahn as a finalist and then communicate its lack of support for her candidacy to

President Kelley. (Dr. McEvoy Dep. at 66-67[ Tab L]; Grossman Dep. at 259-261 [Tab K].)

Chairperson Grossman asked the other eight Committee members whether their votes, or the vote of any other member, had been at all discriminatory or influenced by gender. Each member individually confirmed that the selection process had been fair, proper and non-discriminatory. (Grossman Decl. [Tab A].)

The Committee decided to recommend Dr. Snyder, Dr. Falkner Dr. LeBeau and Dr. Buller for President Kelley's consideration. The Committee ultimately selected four finalists, because of the narrow margin between Dr. LeBeau and Dr. Buller. (Grossman Dep. at 230-231 [Tab K].) Dr. McEvoy resigned from the Search Committee on January 31, 2001 (App. Tab 23). Chairperson Grossman communicated the Committee's recommendations and Dr. McEvoy's dissent to President Kelley and Stephen Jakab, Affirmative Action Officer. (Grossman Dep. [Tab K].)

Chairperson Grossman completed the University's Affirmative Action Report, noting that female candidates were not found to have the necessary qualifications. With regards to Dr. Kahn, the Committee did not believe that she possessed the superior leadership abilities or scholarly credentials in comparison with the other candidates. (Grossman Decl. [Tab A].)

President Kelley offered the Dean's position to Dr. Falkner (male, age 53), who ultimately declined the position. President Kelley then extended an offer to Dr. Snyder (male, age 41), who accepted on March 15, 2001. (Grossman Decl. [Tab A]; Offer Letters [App. Tab 16]; Falkner Decl. [Tab H].)

On March 31, 2001, Dr. Sharlene McEvoy sent a letter to Dr. Kahn stating that she had learned the new Dean was announced and inviting her to get together for a talk.

10

On February 12, 2001, Dr. Kahn wrote to President Kelley [Tab 19], and subsequently met with him to discuss career opportunities at Fairfield and elsewhere. President Kelley thanked Dr. Kahn for her contributions and offered his support. *(See* Kahn Dep. at 155[Tab M].)

On June 1, 2001 Dr. Kahn was appointed to the position of Associate Dean (App. Tab 18). On July 21, 2001, Dr. Kahn resigned from her position at Fairfield, effective August 17, 2001 (App. Tab 19) and accepted the position of Associate Provost at Pace University, with a starting base salary of $102,000 (App. Tab 20).

On November 15, 2001, Dr. Kahn filed a discrimination charge against Fairfield University with the Connecticut Commission on Human Rights and Opportunities and further requested that the charge be filed with the Equal Employment Opportunity Commission (App. Tab 26).

## ARGUMENT

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  To defeat summary judgment, the non-moving party must come forward with "hard evidence", D'Amico, 132 F.3d at 149, that satisfies each element of her case Celotex, 477 U.S. at 322.  Summary judgment cannot be avoided by mere conjecture or speculation; rather, the plaintiff must produce specific facts and evidence that a genuine factual issue exists. Scotto v. Almenas, 143 F.3d. 105, 114 (2d Cir. 1998); D'Amico, 132 F.2d at 149; Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1996); Argus Inc. v. Eastman Kodak Co., 801

11

F.2d 38, 42 (2d Cir. 1986); Phoenix v. Reddish, 175 F. Supp. 2d 215, 217 (D. Conn. 2001); Kocsis v. Standard Ins. Co. 142 F. Supp. 2d 241, 250 (D. Conn. 2001). Nor can the non-moving party prevail based solely on the allegations in the complaint, particularly when those allegations are contradicted by deposition testimony. See Celotex, 477 U.S. at 324 (party may not rely on "mere pleadings").

Here, the plaintiff has failed to produce facts or evidence in support of her contentions that Fairfield University discriminated against her because of her sex or age. See Bickerstaff v. Vassar College, 196 F.3d 435, 455-56 (2d Cir. 1999); see also Kelly v. Yale University, 2003 WL 1563424 (D. Conn. 2003). Likewise, the plaintiff has failed to produce any evidence that the University's actions were extreme and outrageous. See Johnson v. Chesebrough-Pond's, Inc., 918 F. Supp. 543, 552 (D.Conn.) aff'd, 104 F.3d 355 (2d Cir. 1996). Therefore, an award of summary judgment in favor of the defendant is appropriate. See Weinstock v. Columbia University, 224 F. 3d 33, 42 (2d Cir. 2000). (Trial Courts should not treat discrimination differently than other questions of fact).

## II.    ELEMENTS OF A CLAIM FOR DISCRIMINATION BASED UPON GENDER OR AGE

As plaintiff has not alleged any direct or overt evidence of discriminatory conduct, the three-part burden shifting framework is utilized to determine whether summary judgment is appropriate. See Fisher v. Vassar College, 114 F.3d 1332, 1333-36 (2d Cir. 1997) (en banc) cert. denied 522 U.S. 1975, 1185 S. Ct. 851, 139 L. E d 2d 752 (1998).

At the first step, in order to make out a *prima facie* case of discriminatory failure to

12

appoint or promote [2] in violation of Title VII, ADEA, or CFEPA, Dr. Kahn must show that (1)
she is a member of a protected class, (2) she was qualified for the job, (3) she was denied the job,
and (4) the denial occurred under circumstances giving rise to an inference of discrimination on
the basis of gender. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817,
36 L Ed. 668 (1973); Howelv v. Town of Stratford, 217 F.3d 141, 149 (2d Cir. 2000). [Title VII];
cert. denied, 530 U.S. 1261, 1205 S. Ct 2718, 147 L. Ed. 983 (2000). Carlton v. Mystic Transp.,
202 F.3d 129, 134 (2d Cir. 2000), [Age]; State of Connecticut v. Comm'n on Human Rights &
Opportunities, 211 Conn. 464, 470 (1989) [Same standards under (CFEPA)] The burden that the
plaintiff must meet at this initial stage upon motion for summary judgment has been described as
"de minimis". Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

If Dr. Kahn meets her *prima facie* burden, the University may then demonstrate, by
admissible evidence, a legitimate, non-discriminatory reason for not selecting Dr. Kahn as a
finalist for the CAS Dean's position.   At the third step, the plaintiff is then given the opportunity
to adduce admissible evidence that would be sufficient to permit a rational trier of fact to infer
that the proferred reason is a pretext for a discriminatory motivation. Texas Department of
Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 67 L. Ed.2d 207 (1981).
Merely showing an issue of material fact as to whether the defendant's proferred explanation is
genuine does not entitle plaintiff to prevail.  To get to the jury, the evidence must be sufficient to
support a rational finding that, more likely than not, discrimination was the real reason for the
employment action.

---

[2]Dr. Kahn acknowledged in her deposition testimony that there is no line of progression
from Associate Dean to Dean. Kahn at Dep. 180 [Tab M]. Rather, the Academic Deans
positions are filled by a national search for the best candidate.  There is no preference for internal
candidates. Kahn Depo.at 180.

13

III.  **PLAINTIFF'S TITLE VII, ADEA AND CFEPA CLAIMS FAIL
      AS A MATTER OF LAW**

A.    **Plaintiff Fails to Demonstrate a prima facie Showing of Age Discrimination**.

Dr. Beverly Kahn, at the time she was not selected as a finalist by the University's Search

Committee, was a female, age 53, and is therefore a member of a protected class. The Search

Committee determined that she did not possess all of the necessary qualifications for the

position. Specifically, the CAS faculty representatives did not believe that she had demonstrated

academic leadership. However, within the meaning of the second element of the *prima facie*

case, a plaintiff is qualified if some significant portion of faculty or scholars in the field hold a

favorable view. See Zahorik v. Cornell Univ. 729 F.2d 85, 93-94 (2d Cir. 1984). See also dela

Cruz v. New York City Human Resources Admin. 82 F. 3d 16, 20 (2d Cir.1996) (to satisfy the

*prima facie* test for qualifications, plaintiffs need only show the basic skills necessary for

performance of the job).  Given the minimal level of proof, which is *less* than that needed to

support a rational jury verdict, at the *prima facie* stage, the Defendant does not argue for

purposes of summary judgment that the second element is factually undisputed. See Fisher, 114

F. 3d at 1337.

The third *prima facie* element is satisfied in that Dr. Kahn was not offered the Dean's

position for the College of Arts and Sciences. Dr. Kahn may rely upon the fact that the four

finalists recommended by the Search Committee were male to raise an issue of fact as to

circumstances which could give rise to an inference of discrimination.  However, with regards to

Plaintiff's ADEA and CFEPA age claims, there was no age related disparity between the plaintiff

and the final candidates selected by the Search Committee.  Two of the finalists, Dr. Falkner and

14

Dr. LeBeau were the same age, 53, as the plaintiff. Dr. Buller was 46 and Dr. Snyder was 41.

Dr. Kahn did not even allege age discrimination in her Affidavit filed with the Commission on Human Rights & Opportunities on November 15, 2001 (see para. 24: "I therefore charge the Respondent with discriminating against me because of my gender.") [App. Tab 26]. Her claims of age discrimination were asserted only because the candidate hired, Dr. Timothy Snyder, appeared to Dr. Kahn to be somewhat younger than herself. Kahn Depo. at 40, 41. Unbeknownst to Dr. Kahn at the time she filed this lawsuit and first alleged age discrimination, the CAS Dean's position was initially offered in 2001 to Dr. Thomas Falkner, who is the same age (53) as the Plaintiff. Dr. Falkner was strongly supported by all members of the Search Committee, as well as by Dr. Sharlene McEvoy before she resigned from the Committee. In sum, the Plaintiff's allegations of age discrimination are frivolous and should be dismissed because the Plaintiff has not proferred any evidence to support even a *prima facie* showing.

**B.**     **The Undisputed Facts Established Legitimate, Non-Discriminatory Reasons Plaintiff Was Not Selected as a Finalist**

The University has demonstrated, by the deposition testimony and declarations appended hereto, that Dr. Kahn was not selected as a finalist for the CAS Dean's position because the nine member Search Committee determined that she did not fulfill all of the requirements for the position. Specifically, the primary role of the Dean is to lead the faculty of the College of Arts and Sciences. Several members of the Arts and Sciences members, elected to the Committee, were seeking a role model for academic scholarship. Keenan Decl. [Tab F], Dallavalle Decl. [Tab E]. However, Dr. Kahn had spent most of her career in administration. Her scholarly

15

accomplishments, including research, writing and teaching, in the Committee members' opinions, were less impressive than the other candidates.  Cf. Kahn application [App. Tab 9]; Snyder application [App. Tab 11 ]; LeBeau application [App. Tab 12]; and Buller application [App. Tab 13].

Some of the Committee members did not believe that Dr. Kahn had demonstrated effective leadership ability or a vision for the future of the College.  Schwab Decl. [Tab D]; Dellavalle Decl. [Tab E].

While three members of the Committee, (School of Business Professor Sharlene McEvoy, former Associate Dean Lawrence Miners, and student Kevin Hayes), supported Dr. Kahn's candidacy, the University ultimately offered the position to, Dr. Falkner and Dr. Snyder, who had close to unanimous, enthusiastic support from all members of the Committee.

Courts have consistently recognized that Universities have the right to set their own criteria for hiring or promotion, and then to evaluate candidates under such criteria.  See Bickerstaff, 196 F.3d 435, 456 (2d Cir. 1999) citing Lieberman v. Gant, 630 F. 2d 60, 67 (2d Cir. 1980) and quoting Sweezy v. New Hampshire, 354 U.S. 234, 263, 77 S Ct.  1203, 1L Ed.2d 1311 (1957) ("A University's prerogative to determine for itself on academic grounds who may teach is an important part of our long tradition of academic freedom.")  While such concerns about academic freedom usually arise in the context of unsuccessful tenure applicants seeking judicial redress, in the instant case, the CAS faculty's right to freely participate in selecting the Dean of Arts and Sciences is equally deserving of protection.  Matters such as research, scholarship and professional stature are subjective; they must be left for evaluation by the professionals unless they can be shown to have been used "as the mechanism to obscure discrimination."  Kunda v.

16

Muhlenberg College, 621 F.2d 532, 548 (3d Cir. 1980).

Here, the qualifications and requirements for the position are clearly articulated in the position's description. The Search Committee had carefully structured the interview process so that all candidates were asked the same questions. The Courts have recognized that selecting a pool of applicants based upon their written credentials and then making a final decision based upon personal interviews is a reasonable method of selecting a professional employee. Fischbach v. Dist. of Columbia Dept. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Further, the assessment of leadership ability and scholarly accomplishments is, to a large extent, a subjective process. There is nothing unlawful about a Committee member basing his/her final decision on subjective criteria, such as the impression the candidate makes during an interview. Byrnie v. Town of Cromwell Public Schools, 243 F. 3d 93 (D. Conn. 2000).

The Business School Committee member, Dr. Sharlene McEvoy, strongly advocated to the Committee that Dr. Kahn was objectively, as or better qualified than the other semi-finalists. The "objective criteria" Dr. McEvoy articulated, such as "length of service", have limited utility and application in the selection of a leader for the CAS faculty, and the criterion "accomplishments as Dean" is also largely subjective. The record evidence clearly demonstrates that major differences of opinion existed between Dr. McEvoy and other Committee members regarding Dr. Kahn's leadership abilities and scholarly accomplishments. There was no discrimination based upon age or gender. See Weinstock at 46, See also Zahorik, 729 F.2d at 95. When a promotion decision is reasonably attributable to an honest, even thorough partially subjective, evaluation of qualifications, no inference of discrimination can thus be drawn. Gant, 630 F.2d at 67; See also Byrnie, 243 F.3d 93 (D. Conn. 2001).

17

In conclusion, the defendant Fairfield University has articulated non-discriminatory reasons why the Committee did not recommend Dr. Kahn as a finalist. The University is entitled to summary judgment absent a showing by the Plaintiff of evidence which would support a verdict of discrimination. Sioson v. Knights of Columbus, 160 F. Supp. 2d 316 (D. Conn. 2001) citing Farias, 259 F.3d 91, 98-99.

## C.    Plaintiff Has Not and Cannot Demonstrate Evidence Supporting any Claim of Pretext

The Plaintiff's claims regarding pretext are based solely upon the conclusory assertions of dissenting Search Committee member Dr. Sharlene McEvoy. Even assuming arguendo, that Dr. McEvoy is correct in her opinion that Dr. Kahn may make a *prima facie* showing of gender discrimination, the University has responded by proferring a non-discriminatory explanation for the Committee's action. "At this point no rule of law gives artificially enhanced weight to any piece of evidence." Fisher, 114 F.3d at 1347.

Dr. McEvoy's unsupported allegations do not create a material issue of fact. Goenaga v. March of Dimes Birth Defects Foundation., 51 F.3d 14, 18 (2d Cir. 1995). In her scripted speech to the Search Committee, Dr. McEvoy fails to identify a single "concrete particular" to support her allegations that the Committee's vote could be discriminatory. Bickerstaff, 193 F.3d at 453, citing Schwapp v. Town of Avon, 118 F. 3d 106, 111 (2d Cir. 1999). Further, Dr. McEvoy's suggestion to the Committee that it avoid a potential discrimination claim by including Dr. Kahn as a finalist, while communicating to President Kelley its lack of support for her candidacy, seriously undermines her credibility as both an attorney and a member of the Committee.

The Plaintiff cannot demonstrate any circumstances which would support an inference of

18

discriminatory animus, much less support a verdict in her favor. The majority of the Search

Committee members (six out of nine) were female, and none of them except Dr. McEvoy

supported Dr. Kahn as a finalist. See Brousard-Norcross v. Augustina College Ass'n, 935 F. 2d

974, 978 n.7 (8th Cir. 1991) [Evidence of gender discrimination lacking where Committee vote

did not split along gender lines]. Further, the Committee member accused by Dr. Kahn of

discriminatory animus, Dr. Schwab, served on the 1990 Search Committee for Assistant Dean's

position which supported the hiring of Dr. Kahn for that position.

The record evidence demonstrates that the 2000 Search Committee for Dean of Arts and

Sciences selected three women candidates for interview: Dr. Zahn, Dr. Borst and Dr. Kahn. Dr.

Zahn accepted a position elsewhere and withdrew. All of the Committee members, including Dr.

McEvoy, were in agreement that Dr. Borst presented with a poor interview and she did not

possess the qualities necessary for the position.

Based upon the documented undisputed facts, there is thus no material issue of fact

regarding any claim of pretext and summary judgment should enter dismissing Counts One

through Four.

**D.      Plaintiff's CFEPA Claims Are Time Barred**

The undisputed facts clearly establish that the Plaintiff's claims set forth in Count Two

and Four under C.G.S. §46a-60 et. seq. were not timely administratively filed with the CHRO as

a prerequisite to the present course of action under state law. Plaintiff acknowledges that she was

told by Vice-President Grossman on or about January 30, 2001 that she had not been selected by

the Committee as a finalist. However, Dr. Kahn did not file her complaint with the CHRO until

November 15, 2001, approximately 285 days after she was informed about her non-selection and

19

several months after she accepted a new position as Associate Provost at Pace University. While the Plaintiff filed her charge [App. Tab 26] shortly before the 300 day administrative time limitation for filing federal claims with the EEOC, she failed to comply with the 180 day time limitation set forth in C.G. S.§46a-82 for claims under CFEPA.

Dr. Kahn alleges that she first learned of the alleged discrimination on May 23, 2001, upon meeting with Dr. Sharlene McEvoy. Dr. McEvoy provided Dr. Kahn with a copy of the script of the speech she presented to the Search Committee on January 31, 2001. Further, Dr. McEvoy subsequently referred Dr. Kahn to her attorneys in order to pursue this action.

Connecticut Courts often look to federal employment discrimination law for guidance in enforcing the CEFPA. Dept. of Health Services v. Comm'n on Human Rights & Opportunities, 198 Conn. 479, 489, 503 A.2d 1151 (1986). An adverse employment action, such as a failure to hire or promote, constitutes a complete act at the time if occurs. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 1072-73, 153 L. Ed. 2d 106 (2002). The period for filing a complaint begins to run on the date that the employee receives notice of the alleged discriminatory action. Delaware State College v. Ricks, 449 U.S. 250 (1980). Courts have rejected arguments that the filing period should be extended pending an employee's knowledge that the conduct was discriminatory. See Cerbone v. International Ladies Garment Workers Union, 768 F.2d 45 (2d Cir. 1985). While the Connecticut Courts have recognized the doctrine of waiver and equitable tolling of the 180 day limitation, there is no record evidence here to support such a claim. Summary judgment should enter in favor of the Defendant on Counts Two and Four.

## IV.    PLAINTIFF HAS NOT AND CANNOT DEMONSTRATE EVIDENCE SUPPORTING HER CLAIM OF EMOTIONAL DISTRESS

In denying the Defendant's Motion to Dismiss the Plaintiff's Fifth Count, alleging intentional infliction of emotional distress, this Court noted:

> While the Court may very well, in the absence of evidence to buttress these allegations, grant a Motion for Summary Judgment, the Court is disinclined to preclude the Plaintiff from attempting to establish a record that there are material issues of fact on this claim

Ruling Re: Motion to Dismiss, (Hall, J.) April 4, 2003.

No record evidence has been adduced to create any material fact as to the requisite element that the Plaintiff prove extreme and outrageous conduct which exceeds all bounds usually tolerated by a decent society.  Huff v. West Haven Board of Education, 10 F. Supp. 117, 122 (D. Conn. 1999).

While the Search Committee's action in not recommending Dr. Kahn as a finalist for the Dean's position was undoubtedly disappointing to her, Vice-President Grossman, Dr. Miners and Dean Deignan all extended consideration and kindnesses to Plaintiff.  President Kelley also met with Dr. Kahn, at her request, and offered his thanks for her work as Acting Dean and support with regards to her future endeavors.

As a matter of law, no reasonable jury could find that the University's actions were "extreme and outrageous."  Kelly v. Yale University, 2003 WL 1563424 (D. Conn. 2003).  In the event this Court dismisses the federal claims, declining pendent jurisdiction would not serve the interest of judicial efficiency.  See Mauro v. SNET, 208 F.3d 384 (D. Conn. 2000).  This Court should grant Defendant summary judgment on Count Five.

21

## **CONCLUSION**

For the reasons set forth above, summary judgment should be granted in favor of Fairfield

University.

Dated: March 23, 2004


BY _____
     Carolyn R. Linsey              ct07674

Owens, Schine & Nicola, P.C.
799 Silver Lane
Trumbull, CT 06611
(203) 375-0600

Attorney for Defendant Fairfield University

22

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed postage prepaid to all counsel and pro se parties of record on March 23, 2004.

Craig Dickinson, Esq.
Madsen, Prestley & Parenteau
44 Capitol Avenue, Suite 201
Hartford, CT   06106


_____
Carolyn R. Linsey