**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Fairfield University submits this reply memorandum of law in support of its

motion for summary judgment.

**PRELIMINARY STATEMENT**

Defendant's opening brief and statement of undisputed facts demonstrated that Plaintiff's

claims fail as a matter of law.  The Plaintiff's opposition brief concedes the lack of evidence to

support Counts Three, Four and Five and withdraws those claims.  (Pl. Mem.[1] at 1).   The

Plaintiff's opposition papers offer only conclusory allegations and speculation, together with

record citations which fail to demonstrate any material triable facts which would preclude

granting the Defendant's Motion for Summary Judgment.

**ARGUMENT**

**A.     The University Search Committee's Action in Not Selecting Dr. Kahn
        as a Finalist was Not Motivated by Gender Discrimination**

First, the record contains absolutely no direct evidence of gender discrimination with

regard to the Fairfield University Search Committee's non-selection of Dr. Kahn as a finalist for

the Dean's position.

---

[1]    "Pl. Mem." refers to Plaintiff's Opposition to Defendant's Motion for Summary
       Judgment, dated May 6, 2004.  "Pl. Stmnt." refers to Plaintiff's Local Rule 56(a)(2)
       statement.

Second, the Plaintiff provides no circumstantial evidence from which a rational fact finder could infer a triable issue of fact that the Search Committee's action was motivated by gender discrimination. Plaintiff's opposition brief, p. 19, includes a lengthy string citation to cases holding that evidence of a strong *prima facie* case may be sufficient to survive summary judgment, but Plaintiff does not point to any evidence in her case which would give rise to such strong showing. Even assuming at the *prima facie* stage that the Search Committee's selection of four male finalists raises a triable issue as to circumstances which could give rise to an inference of discrimination, the inference would not be strong. The Search Committee actively sought out female candidates for the Dean's position, but there were not a large number of qualified female applicants. (Def. Stmnt. ¶17, Deignan Decl. [Tab B], Miners Decl. [Tab C], Hayes Decl. [Tab G]). The Committee selected three female candidates for interview: Dr. Kahn, Dr. Zahn, and Dr. Borst. (Grossman Decl. [Tab A]). Dr. Zahn accepted another position and dropped out, and Dr. Borst had a poor interview. (Grossman Decl. [Tab A], McEvoy Dep. 36-41 [Tab L]). The Search Committee members (six elected faculty and three appointed representatives for the administration, students and alumni) were uniformly impressed by the two applicants ultimately offered the position, Dr. Thomas Falkner (who declined the position) and Dr. Timothy Snyder. (Def. Stmnt. ¶27). Dr. Kahn had the support of Committee members Dr. Sharlene McEvoy, Dr. Lawrence Miners, and Kevin Hayes (student), all of whom had previously worked with Dr. Kahn and had a positive experience. (Def. Stmnt. ¶24). However, Committee members Dean

2

Margaret Deignan, Dr. Nancy Dallavalle, Dr. Nancy Haegel, Dr. Katherine Schwab, Mary

Margaret Weber, and Dr. Dennis Keenan did not vote for Dr. Kahn as a finalist.  Courts have

declined to find any triable issue of discrimination in situations where the alleged adverse action

was determined by a committee which did not divide along gender lines.  *Brousard-Norcross v.*

*Augustana College Ass'n*, 935 F.2d 974,978 n.7 (8th Cir. 1991); *Stein v. Kent State University*

*Board of Trustees*, 994 F. Supp. 898, 909 (N.D. Ohio 1998).  Dr. Schwab reported negative

experiences working under Acting Dean Kahn.  (Schwab Decl. [Tab D]).  While Dean Deignan

had good interactions with Dr. Kahn while she was Acting Dean, she believed that the Plaintiff

was easier to work with than to work for.  (Deignan Dep. at 59 [Appended]).  The Plaintiff fails

to demonstrate any triable issue regarding the reasons that the Committee majority favored other

candidates.  Moreover, it is implausible that five female members of the Search Committee

would have been motivated by gender in voting for candidates other than Dr. Kahn.

The Plaintiff's reliance upon *Byrnie v. Town of Cromwell Bd. of Ed.,* 243 F.3d. 93 (2d

Cir. 2001) to defeat summary judgment is misplaced.  (Pl. Mem. at 20).  The contrast between

the records of this case and *Byrnie* highlights the lack of merit of the instant case.  The

controlling factor underlying the Second Circuit holding in *Byrnie* that triable issues precluded

summary judgment was the defendant Cromwell's destruction of personnel records, permitting

an inference of spoilation.  Id. at 110-111.  There is no claim in this case that records were

destroyed or that the University engaged in any similar misconduct.  An additional factor

3

supporting the Court's reversal of summary judgment in *Byrnie* was the plaintiff's eminently

superior qualifications over the applicant hired, who did not even have the degree required for

the position. [2]   But Dr. Kahn does not claim that her credentials [i.e.; degrees, publications, and

positions held] were superior to the candidates selected, nor does she argue that she was more

qualified for the Dean of Arts and Sciences position.  (Pl. Stmnt. ¶¶18, 23, 25, 26).

Plaintiff's reliance upon her past performance and accomplishments at Fairfield

University to demonstrate a triable issue regarding pretext (Pl. Mem. at 22-26) is unconvincing

for several reasons.  The Dean of the College of Arts and Sciences is a key leadership position at

Fairfield University and requires different skills and abilities than the assistant or associate dean

positions, which are project oriented staff positions under the Dean's supervision.  (Grossman

Dep. at 78 [Appended]).  Because the Dean has no real authority, the position requires a special

ability to involve faculty in a positive way and to build consensus.  (Grossman Dep. at 103

[Appended]).  The Search Committee members who did not vote for Dr. Kahn believed that she

had not demonstrated such ability**.**   (Def. Stmnt. ¶26).

---

[2]   The Second Circuit held that Byrnie's superior credentials, on their own, could not
create a triable issue defeating summary judgment.  "In effect, the plaintiff's
credentials would have to be so superior to the credentials of the person selected for
the job that 'no reasonable person, in the exercise of impartial judgment, could have
chosen the candidate selected over the plaintiff for the job in question.' " *Byrnie v.
Town of Cromwell Bd. of Ed.*, 243 F.3d. at 103 citing *Deines v. Tex. Dept of
Protective and Regulatory Servs.*, 164 F.3d 277, 280-281 (5th Cir. 1999).  This
proposition obviously does not support the Plaintiff's case.

The Search Committee's charge, consistent with Fairfield University's governance documents, is to conduct a national search for "the best, most intellectually vibrant and most diverse candidates the Committee can find." (Def. Stmnt. ¶¶ 4, 7). There is no preference for internal candidates who choose to apply for the Dean's position and no promotional hierarchy from the position of associate dean to dean. ( Kahn Dep. at 180 [Appended]).

Moreover, the faculty had not participated in Dr. Kahn's selection as Acting Dean, pending the completion of a national search. This was the prerogative of Academic Vice-President Grossman.[3] (Kelley Dep. at 28-29 [Appended]). When Dr. Kahn applied for the Dean's position, she encountered faculty expectations different from those of the administration. (Cf. Keenan Decl. [Tab F] and Kelley Dep. at 28-29). For the foregoing reasons, no rational inference of pretext, much less gender discrimination, can be derived from the Plaintiff's record of performance at Fairfield.

The Plaintiff's attempt to dismiss criticism of her leadership abilities as "insidious gender stereotyping" is hollow as well. (Pl. Mem. at 25-31. The Plaintiff's brief glosses over the fact that the Committee members who did not vote for Dr. Kahn were (with the exception of Keenan) women, including one Dean and three elected tenured faculty members. Gender stereotyping may occur where an employer, typically male, objects to aggressiveness in women but nevertheless

---

[3]    Academic Vice-President attempted to speak to Dr. Kahn at the time of her appointment about her interaction with faculty members, but she refused to listen. (Grossman Dep. at 104-105. [Appended], Pl. Mem. At 30).

requires this trait for the position. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S. Ct.

1797, 1791 (1989).   Here, however, there is ample record evidence that the Search Committee

was not seeking an aggressive leader, but rather a Dean who would listen to faculty concerns,

build consensus, and galvanize programs.   *See* e.g., Schwab Depo. at 48-49 [Appended];

Grossman Dep. at 103-104 [Appended]).   Further, there is no suggestion in the record evidence

that Dr. Kahn was ever criticized for being "aggressive" or too "masculine" (Pl. Mem. at 31), as

was the case in *Price Waterhouse,* Id.  Dr. Khan admits to a tendency to forge ahead with her

agenda (regardless of what some faculty thought), but argues that this is "the epitome of

leadership."   (Pl. Mem. at 25).   These conflicting views about leadership style have nothing to

do with gender and refute the existence of any triable issue.

The Plaintiff's opposing papers include numerous matters which are not admissible,  for

example, an undated student newspaper article (Pl. Mem. Tab 1) which reflects that approximately

one-half of the Dean positions at Fairfield are held by women.  The Plaintiff points to inadmissible

conclusory opinions on the part of Dr. Khan and Dr. McEvoy that women have been treated

unfavorably at Fairfield.  (Pl. Mem. at 2).  *See Hester v. Bic Corporatio*n, 225 F.3d 178 (2d Cir.

2000).  [Lay testimony that amounts to speculation concerning discriminatory motivation not

admissible].   The fact that some Committee members do not recollect the briefing by Bridget Hayes

on affirmative action (Grossman Decl.[Tab A]) and that the Plaintiff disagrees with the manner in

which Dr. Grossman completed the affirmative action compliance form does not raise a triable issue**.**

6

(Pl. Stmnt. ¶10).   There is considerable record evidence that Committee members were guided by the University's affirmative action policy.  (Def. Stmnt. ¶¶14, 41).  Moreover, Vice-President Grossman responded appropriately to Dr. McEvoy's claim that Dr. Kahn might have a *prima facie* case of discrimination by immediately polling all members of the Committee and then reporting the matter to President Kelley.  (Def. Stmnt. ¶¶ 37, 40, Kelley Dep. at 36, 38, [Appended]).   Neither Dr. McEvoy nor Dr. Kahn filed a discrimination complaint with the University under its internal procedures. (Kahn Dep. at 73-74, McEvoy Dep. at 186-187 [Appended]).   Fairfield University's response to Dr. McEvoy's suggestion that the Committee should include Dr. Kahn as a finalist, while communicating its lack of support to Father Kelley,[4] does not raise any triable issue.

The Plaintiff also claims that she was paid less than other male deans in 1998 and that her salary as Acting Dean in 1999-2000 was less than the salary offered to Dr. Timothy Synder.  (Pl. Stmnt. ¶7).  The record reflects that the male deans Dr. Kahn compared herself to were tenured faculty members (unlike Dr. Kahn) and received their faculty salary plus a stipend for the additional administrative work.  (Pl. Mem. Tab G).   Further, acting deans at Fairfield receive a stipend upon appointment for the additional work; they are not paid a salary equivalent to the permanent candidate. (Kelley Dep. at 49-51 [Appended]). The Plaintiff fails to point to any evidence that the foregoing policies are discriminatory based upon gender.  Additionally, salary issues are determined by the

---

[4]   Dr. McEvoy suggested that this would protect the Committee from being sued.  (Def. Stmnt. ¶35).  It is ironic that Dr. Kahn did not consider suing the University until she was encouraged by Dr. McEvoy to do so.  (Pl. Mem. at 35).

University Vice-Presidents and have no relevance to the action of the Search Committee. *See*

*Cornwell v. Robinson*, 23 F. 3d 694, 704 (2d Cir. 1994). [Time barred incidents of discrimination

will not be considered unless part of a continuing policy or practice]. Dr. Kahn does not claim a

pattern or practice of discrimination (Kahn Dep. at 168-169 [Appended]), and her claims about salary

issues are therefore time barred and inadmissible. *See Van Zant v. KLM Royal Dutch Airlines*, 80

F.3d 708, 713 (2d Cir. 1996)**.** [Discrete incidents of discrimination which are not the result of a

discriminatory policy or practice will not amount to a continuing violation].

When Plaintiff's unsupported and conclusory allegations are stripped away, and the record is

carefully scrutinized, there is no admissible evidence showing circumstances sufficient to permit a

rational fact finder to infer that the Search Committee action was motivated by gender discrimination

against Dr. Kahn.

The Plaintiff's Amended Complaint, pp. 19-24, alleges damages resulting from Dr. Kahn's

elimination by the Search Committee and the University's hiring of a younger, male candidate to fill

its Dean of Arts and Sciences position "despite Plaintiff's superior qualification and successful tenure

at Fairfield." Interestingly, Plaintiff's opposing papers do not point to any evidence that her

qualifications were superior to those of the successful candidate, Dr. Timothy Snyder, nor does

Plaintiff argue that **but for** her elimination by the Search Committee, she would have been the

successful candidate. *See Stratton v. Dept. of Aging*, 132 F.3d 869, 881 (2d Cir. 1997). [Award of

damages upheld upon jury determination that **but for** defendant's discriminatory acts, the plaintiff

would have gotten the position].  As this is an essential element of the Plaintiff's case, summary

judgment must be granted.

**B.      Plaintiff's CEFPA Claim is Time Barred**

The Plaintiff fails to point to any facts which would create a triable issue relating to equitable

tolling of the time limitation for filing a complaint under Connecticut state law.  *See Williams v.*

*Commission on Human Rights and Opportunities*, 67 Conn. App. 316 (2001).  According to C.G.S.

§46a-82(e), a complaint of employment discrimination "must be filed within one hundred eighty days

after the **alleged act of discrimination**...." [Emphasis added]**,** not the date that the employee formed

an opinion that the employer had discriminated against her.  But even if the "knew or should have

known" standard advocated by Plaintiff (Pl. Mem. at 34) applied under §46a-82(e), Dr. Kahn learned

in mid-April, 2001, that Dr. Timothy Snyder had been appointed Dean of the College of Arts and

Sciences (Kahn Dep. at 23), and did not thereafter file her CHRO complaint within 180 days.  As a

matter of law, the Plaintiff's claim under CFEPA is time barred.

9

## CONCLUSION

For the foregoing reasons, and those set forth in Defendant's opening papers, Defendant's

summary judgment motion should be granted.

Respectfully Submitted,
THE DEFENDANT,
FAIRFIELD UNIVERSITY


BY_____
Carolyn R. Linsey   # ct0767
799 Silver Lane (P.O. Box 753)
Trumbull, CT 06611
(203) 375-0600

**CERTIFICATION**

  This is to certify that a copy of the foregoing was mailed postage prepaid on June 8, 2004 to all counsel and pro se parties of record:


Craig Dickinson, Esq.
Madsen, Prestley & Parenteau
44 Capitol Avenue, Suite 201
Hartford, CT 06106


                 _____
                 Carolyn R. Linsey